J-S19028-23

2023 PA Super 208

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
 :  PENNSYLVANIA
 :
v.  :
 :
 :
LASTACIA MARIE GRIFFITH  :
 :
Appellant  : No. 1106 MDA 2022

Appeal from the Judgment of Sentence Entered July 6, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005762-2021

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

DISSENTING OPINION BY BENDER, P.J.E.: **FILED: OCTOBER 19, 2023**

I respectfully dissent.  The facts as found by the trial court in this bench trial established only that Griffith was a casual, temporary possessor of Jocelyn Murphy's iPhone.  I conclude that the General Assembly, when enacting the theft of lost property statute,[1] did not intend to punish a person who temporarily controls an item.  The Majority, in contrast, holds that citizens are forced to act as bailees if they happen to pick up a lost item.  This holding is inconsistent with the fact that a citizen has no duty to help another absent special circumstances that are not present here.  I would therefore discharge Griffith's conviction.

---

[1] The full title of the statute is "Theft of property lost, mislaid, or delivered by mistake."  For ease of reference, this writing refers to the statute as theft of lost property.

In my view, the Majority has been led astray by the fact that Griffith and Murphy do not like each other. That hostility is then used to bootstrap a conclusion that Griffith intended to deprive Murphy of her phone. I begin with the statutory text:

> A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with the intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 Pa.C.S. § 3924.

Breaking this statute apart, there must be proof that (1) Griffith came "into control" of Murphy's iPhone, (2) with knowledge that it was lost or mislaid. If those two prongs are met, the Commonwealth then must show that said control was (3) "with the intent to deprive" Murphy of the iPhone, and that (4) Griffith failed to take reasonable measures to return the iPhone to Murphy.

As I interpret the Majority opinion, my learned colleagues conclude that the Commonwealth met the first prong when Griffith and her cousin held the phone and threw it back to the ground where they found it.[2] Then, by failing to take reasonable measures to return the item after controlling it, the Majority concludes that she must have had the intent to deprive Murphy of the iPhone, as reflected in this passage from its opinion:

---

[2] As the Majority notes, Griffith has abandoned a challenge to the second prong.

Griffith knew the victim had lost her phone and that the phone matched the description of the victim's phone (Griffith said her cousin mistakenly thought it was Griffith's phone at first as she and the victim had the same model of phone). But rather than telling the victim the phone's location or taking steps to secure it, she told the victim that the phone was "gone." This evidence was sufficient – when viewed in the Commonwealth's favor – to raise a reasonable inference, beyond a reasonable doubt, that Griffith "dispose[d] of the property so as to make it unlikely that the owner will recover it."

Second, the Commonwealth presented sufficient evidence to establish that Griffith failed to take reasonable measures to "restore" the property. According to her own testimony, Griffith tossed it on the ground after determining it was not hers. She took no steps to secure it or inform the victim, even though she knew the victim's phone was missing and found the phone near the location of the second altercation, and the phone matched the description of the victim's phone. Accordingly, the evidence was sufficient to prove that Griffith failed "to take reasonable measures to restore the property to a person entitled to have it."

Majority Op. at 8 (citation and footnote omitted).

I agree that prongs one and two were met, but I conclude that the third was not. The Majority effectively reads out the third prong by focusing on Griffith's failure to take reasonable steps to return the property as required by the fourth prong. The Majority thus appears to view the statutory requirement "to take reasonable measures" as existing independently of the need to establish an intent to deprive the owner of their property. But that cannot be correct, as exercising control over an item does not, by itself, create a legal duty to return the item. Citizens generally owe no duties to aid another in the absence of some special relationship. "Generally, however, there is no duty to protect or rescue someone who is at risk on account of circumstances the defendant had no role in creating." **Seebold v. Prison Health Servs., Inc.**,

57 A.3d 1232, 1246 (Pa. 2012) (citing **Yania v. Bigan**, 155 A.2d 343, 346 (Pa. 1959)). As **Yania** states, the duty to act is largely one of morals, not law. "The mere fact that Bigan saw Yania in a position of peril in the water imposed upon him no legal, although a moral, obligation or duty to go to his rescue unless Bigan was legally responsible, in whole or in part, for placing Yania in the perilous position." **Yania**, 155 A.2d at 346. This principle readily extends to whether Griffith was required to take ownership of Murphy's phone and then try to return it to her. Certainly, had Griffith opted to take ownership, the theft of lost property statute imposes a duty to take reasonable measures to return it. But that requirement is triggered only if there is an intent to permanently deprive. The temporary possession of the phone, followed by throwing it back where it was found, precludes a finding that the intent was to permanently deprive Griffith of her phone.

At this juncture, I believe that a hypothetical scenario illustrates the point. Suppose that Murphy had left her phone in the pocket of an airplane seat. The next passenger sits down and notices the phone. Hoping that the phone might belong to a handsome bachelor, she presses the power button and sees a profile picture of Murphy. Realizing that a Hollywood "meet cute" will not happen, our passenger decides she does not want to help and puts the phone back where she found it. Has the passenger come into control of the phone, as required by prong one? Yes. Has she failed to take reasonable measures to have the item returned, as required by prong four? Again, yes; the passenger could have flagged a flight attendant or taken possession to

see if the owner called. Has the passenger committed theft of lost property? I cannot speculate what the Majority would conclude, but I think it obvious that the passenger has committed no crime, because there was no specific intent to deprive Murphy of the phone as required by prong three. Returning the phone to where it was found relinquishes whatever degree of temporary control existed by picking it up. Placing the phone where it was found effectively restores the status quo with respect to the passenger's legal duties. There may be a moral duty to help, but there is no legal duty. Thus, unless and until our passenger takes possession of the item for herself, she is under no obligation to help return the item and cannot be guilty of theft.

The difference between that scenario and this case lies in the existing relationship between the parties. But I do not think that this makes any difference. Returning to our hypothetical, suppose the passenger happened to be Griffith. Seeing the lost phone, Griffith decides that she wants to help and presses the on button. She then sees Murphy's profile picture. Laughing at the absurd coincidence, Griffith decides to put the phone back where she found it. Has Griffith committed a crime? No, for the reasons set forth above. Her subjective motivation for declining to help is entirely irrelevant. A legal duty to help return the item arises if, and only if, the person ends up exercising more than temporary control over the item. It is not enough that a person briefly possesses the lost property and then fails to take reasonable measures to secure or return it.

The Majority attempts to find an intent to deprive by citing the statutory definition of "deprive" separately set forth at Section 3901 of the Crimes Code:

(1) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

(2) to dispose of the property so as to make it unlikely that the owner will recover it.

18 Pa.C.S. § 3901.

The Majority relies on the second definition, concluding that Griffith's act of throwing the phone back on the ground made it unlikely that Murphy would recover the item. I disagree that this definition of "deprive" applies under the circumstances. Significantly, the General Assembly copied this definition of "deprive" from Section 223.0 of the Model Penal Code ("MPC"). *See* 18 Pa.C.S. § 3901, Jt. St. Govt. Comm. Comment – 1967. The commentary to the MPC explains what this language was designed to address:

Subsection (1) (b) of Section 223.0 is of course primarily designed to take account of the embezzlement case where at the time of taking the actor intends to return or pay back the money, though he plans to spend it in the meantime. The bank teller who loses the proceeds of his embezzlement at the racetrack will thus have disposed "of the property so as to make it unlikely that the owner will recover it." No new ground is broken in including such conduct within the coverage of provisions on theft.

MPC § 223.2, comment.

I therefore do not agree that, under these factual circumstances, the definition of deprive to mean "unlikely that the owner will recover it" applies. The language "disposes of" contemplates an affirmative act with respect to

the property, not, as here, simply leaving the property where it was lost or mislaid. This is evident from the language itself, which uses "disposes of" as a verb, and the MPC commentary discussing a total conversion of property. This language would apply if, for example, Griffith took the phone and then sold it to a third party. By leaving the phone where it was lost, Griffith did not create the condition that made its recovery unlikely. By returning the phone to where she found it, Griffith neither increased nor decreased the probability that Murphy would find it.

Accordingly, I conclude that the Commonwealth was required to show a permanent deprivation as encompassed by the first definition of "deprive." Returning to the MPC, this view is consistent with what behavior the theft of lost property statute is designed to punish:

> Theft penalties are not imposed on persons who merely learn of the whereabouts of lost property but do not assume some control over it. If it is desirable to provide criminal sanctions for the failure to communicate helpful information to the owners of lost property, this should be done by separate legislation not carrying the moral imputation of theft or the potentially severe sanctions traditionally associated with it. On the other hand, **those who find property and assume more than casual control over it are, under certain circumstances, appropriate subjects of prosecution for theft.**

MPC § 223.2, comment (emphasis added).

Griffith had only casual control over the item, as reflected in the trial court's findings of fact. As the Majority states, on the one hand, the trial court claimed Griffith was not credible, but in other portions of its Rule 1925(a)

- 7 -

opinion, the court credited aspects of her testimony. Specifically, the trial court stated the following:

> Here, Griffith noted that her cousin had picked up a phone assuming it belonged to Griffith. Upon realizing that the phone did not belong to Griffith, they threw the phone back on the ground. Griffith had a phone call with [Murphy] wherein she told [Murphy] that the phone was gone. At no point during the conversation with [Murphy] did Griffith tell her that she had found a phone on the ground and where [Murphy] could go to look for that phone. Additionally, Griffith, being aware of the value of an iPhone, failed to take affirmative steps to secure the phone she found on the ground.

Trial Court Opinion, 9/29/22, at 7.

The Majority and trial court both err by deeming it significant that Griffith, when later contacted by Murphy, did not reveal that she had found the phone on the ground.[3] As discussed, I conclude that Griffith had no legal duty to take affirmative steps to secure the phone, nor any duty to help Murphy find her phone. As far as the record is concerned, the phone was left exactly where Murphy lost it, and Murphy could have simply checked the area for the iPhone. The statutory requirement to take reasonable measures to return the property flows directly from taking permanent ownership of the item. Because Griffith was a mere casual possessor of the item, she was under no obligation to help Murphy. I agree that Griffith hoped that Murphy would never find her lost phone, but that is merely condemnable behavior,

---

[3] To the extent the Majority and trial court find that the intent to deprive arose at this point in time, I disagree. Griffith did not have physical possession of the phone at this time, because, as the trial court found, she had thrown it back to its original location.

not criminal. I would discharge the conviction and therefore respectfully dissent.